

FILED

May 20 2016, 10:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Ellen H. Meilaender
Chandra Hein
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derek Scisney,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 20, 2016<br><br>Court of Appeals Case No.<br>49A02-1504-CR-227<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese M. Flowers, Judge<br><br>Trial Court Cause No.<br>49G20-1410-F4-45982 |

**Mathias, Judge.**

[1] Derek Scisney ("Scisney") was convicted in Marion Superior Court of unlawful possession of a firearm by a serious violent felon ("SVF") and resisting law enforcement. Scisney appeals his conviction for unlawful possession of a firearm by an SVF and argues that the trial court abused its discretion when it

admitted the firearm into evidence. Specifically, he argues that his encounter with the law enforcement officer was not consensual and the officer lacked reasonable suspicion to conduct a Terry stop and the accompanying pat down search.

We affirm.

## Facts and Procedural History

On September 26, 2014, Indianapolis Metropolitan Police Department Officers Brenda Fekkes ("Officer Fekkes") and William Wogan ("Officer Wogan") received a dispatch of "shots fired" by a white male wearing a blue shirt near 800 North Drexel, a "high crime area" in Indianapolis. Appellant's App. p. 52. While searching for the suspect, Officer Fekkes spotted a white male wearing a blue shirt walking southbound in the 700 block of Linwood Avenue, which runs parallel to Drexel Avenue one block to the west.[1]

The white male was walking with a black male, who was later identified as Scisney. Officer Fekkes activated her emergency lights and approached the

---

[1] Neither officer testified as to the time frame between receipt of the dispatch and locating the suspect. The probable cause affidavit states that Officers Samm (a.k.a. Fekkes) and Wogan drove through the Linwood Apartment complex after receiving the dispatch but did not find any person matching the suspect's description. The officers returned to Linwood Avenue and proceeded northbound. Officer Fekkes immediately spotted the white male and black male walking side-by-side after turning onto Linwood Avenue. The probable cause affidavit states that approximately six minutes elapsed from the time the dispatch was received to the time the two males were observed. Appellant's App. p. 18.

white male. She exited her vehicle and made contact with the white male and conducted a pat down search. She did not find any weapons.

[5] Officer Wogan had been following Officer Fekkes and observed her interaction with the white male. As Officer Fekkes approached Scisney's companion, Scisney put his head down and continued walking at a quicker pace. Officer Wogan also saw Scisney touch the right side of his waist. Officer Wogan parked his police vehicle close to Scisney, without activating his emergency lights, and stepped out of the vehicle. He then asked Scisney if he could speak to him. Officer Wogan suspected that Scisney had a weapon because Scisney had touched his waistline. Tr. p. 16. As Scisney approached the officer, Wogan asked Scisney if he had any weapons. Scisney did not respond to the officer's question.

[6] Once Scisney was within reach, Officer Wogan "immediately" conducted a "Terry pat down." Tr. p. 17. The officer felt the grip of a pistol on Scisney's waistline and attempted to remove it from Scisney. At that moment, Scisney ran from the officer. Officer Wogan lost his grip on the pistol, and it fell to the ground as Scisney fled. Officer Wogan ordered Scisney to stop, but he continued to run toward Drexel Avenue. Scisney was apprehended in the backyard of a house in the 800 block of Drexel Avenue.

[7] On October 1, 2014, Scisney was charged with Level 4 felony unlawful possession of a firearm by a SVF, and two counts of Class A misdemeanor resisting law enforcement. Scisney filed a motion to suppress the firearm

discovered during the pat down search. The trial court heard argument on the motion during the February 11, 2015 bench trial.

[8] The trial court denied Scisney's motion to suppress on February 20, 2015. Thereafter, Scisney was found guilty on all counts. He was sentenced to serve eight years for the unlawful possession of a firearm by an SVF conviction, with four years executed and four years suspended to probation. He was also ordered to serve concurrent terms of 360 days for the resisting law enforcement convictions. Scisney now appeals.[2]

## Discussion and Decision

[9] Scisney argues that the trial court abused its discretion when it admitted the firearm discovered during the pat down search into evidence because the search was unconstitutional under the Fourth Amendment to the United States Constitution.[3] The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."

[10] Although Scisney filed a pre-trial motion to suppress, because he appeals following a completed trial, the issue is properly framed as whether the trial court abused its discretion in admitting the evidence. *Clark v. State*, 994 N.E.2d

---

[2] On April 22, 2016, we held oral argument in this case at the Indiana Tech Law School in Ft. Wayne, Indiana. We extend our gratitude to the Allen County Bar Association and to the law school's faculty, staff, and students for their hospitality. We also commend counsel for the quality of their written and oral advocacy.

[3] Scisney does not challenge the pat down search under Article One, Section Eleven of the Indiana Constitution.

252, 259 (Ind. 2013). The admission of evidence is within the discretion of the trial court. *Id*. at 259-60. We will reverse a ruling on the admission of evidence only for an abuse of that discretion, which occurs only when the ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id*. at 260.

[11] "Encounters between law enforcement officers and public citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do." *Id*. at 261. Consensual encounters in which a citizen voluntarily interacts with a police officer do not compel Fourth Amendment analysis. *Id*. Nonconsensual encounters do and typically fall into two categories. *Id*. The first is a full arrest, which requires probable cause. *Id*. The second is a brief investigative stop, often known as a Terry stop, which requires a lower standard of reasonable suspicion. *Id.*

[12] Scisney argues both that his initial encounter with Officer Wogan was not consensual and that Officer Wogan lacked reasonable suspicion to conduct a Terry stop and pat down search. The consensual nature of Scisney's encounter with Officer Wogan was extinguished once the officer asked to speak to Scisney. At that point, a reasonable person in Scisney's situation would not feel free to walk away from the officer because two officers were present in marked police vehicles, emergency lights were activated on one vehicle, and the officers were in full uniform with their police issued firearm readily visible. *See Dowdell v. State*, 747 N.E.2d 564, 567 (Ind. Ct. App. 2001), *trans. denied* (concluding that a "reasonable person when faced with a police officer pulling up to him in a

marked vehicle and calling for him to come over to the car would not assume that he can just turn and walk away"). Therefore, we must determine whether Officer Wogan had reasonable suspicion to stop Scisney when the officer asked to speak with him.

[13] The fundamental principle upon which a Terry stop is based is that the officer must have reasonable suspicion to believe that criminal activity has occurred or is about to occur or that "'criminal activity may be afoot.'" *Holly v. State*, 918 N.E.2d 323, 325 (Ind. 2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Specifically, in *Terry* the United States Supreme Court held:

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30.

[14] However, "'[s]uch reasonable suspicion must be comprised of more than hunches or unparticularized suspicions.'" *Clark*, 994 N.E.2d at 263 (quoting *State v. Murray*, 837 N.E.2d 223, 225-26 (Ind. Ct. App. 2005), *trans. denied*). Taking into account the totality of the circumstances or the whole picture, the

detaining officers must have a particularized an objective basis for suspecting the particular person stopped of criminal activity. *Id*. at 264. In making this determination, we must examine the facts as known to the officer at the moment of the stop. *Id.* Findings of reasonable suspicion are reviewed de novo, and this is necessarily a fact-sensitive inquiry. *Id.*

[15] Consistent with *Terry*, our court has observed that "[a] patdown search for weapons may be conducted if the officer is 'justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others.'" *Bell v. State*, 13 N.E.3d 543, 545 (Ind. Ct. App. 2014) (quoting *Jackson v. State*, 669 N.E.2d 744, 747 (Ind.Ct.App.1996) (quoting *Terry*, 392 U.S. 1 at 24). However, "[n]othing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons." *Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979).

[16] In this case, Officers Fekkes and Wogan received a dispatch of shots fired by a white male in a high crime area.[4] Scisney was walking with a white male matching the description of the suspect. As Officers Fekkes parked her vehicle

---

[4] Presence in a high crime area alone does not constitute reasonable suspicion, but it can be "considered as a factor in the totality of the circumstances confronting an officer at the time of a stop." *Bridgewater v. State*, 793 N.E.2d 1097, 1100 (Ind. Ct. App. 2003), *trans. denied*. Moreover, the fact that the officers were responding to the report of gunshots fired distinguishes this case from *Stalling v. State*, 713 N.E.2d 922, 925 (Ind. Ct. App. 1999), in which our court reversed the trial court's denial of Stalling's motion to suppress after observing Stalling's "movement toward his waistline, without more," did not reasonably support the officer's "suspicion that criminal activity was afoot."

and asked to speak to his companion, Scisney "hurried his pace just a little bit." Tr. p. 8. He continued to walk southbound on Linwood Avenue away from his companion who stopped to speak to Officer Fekkes at her request. Tr. p. 16. Officer Wogan, who had been following Officer Fekkes, noticed that Scisney avoided eye contact with him, and the officer stepped out of his vehicle. After he saw Scisney touch "the right side of his waist line," Officer Wogan asked Scisney if he could "speak with him for a second." Tr. p. 16.

[17] Considering the totality of these circumstances, we agree with the trial court that when he asked to speak of Scisney, Officer Wogan reasonably believed that Scisney had participated in criminal activity and that he was armed and possibly dangerous to the officers. *Cf. W.H. v. State*, 928 N.E.2d 288 (Ind. Ct. App. 2010), *trans. denied*; *Willis v. State*, 907 N.E.2d 541 (Ind. Ct. App. 2009). Moreover, as Scisney walked toward him, Officer Wogan asked if he had any weapons. When Scisney did not respond, the officer immediately performed a Terry pat down search. Because the officer was justifiably concerned for officer and public safety, the pat down search was constitutionally permissible. *See Bell*, 13 N.E.3d at 545. For all of these reasons, the trial court did not abuse its discretion when it admitted the firearm discovered during the pat down search into evidence.

[18] Affirmed.

Vaidik, C.J., and Bradford, J., concur.