## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

FILED

May 03 2017, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Andrew J. Baldwin
Baldwin Kyle & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Mohinder Singh,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 3, 2017

Court of Appeals Case No.
41A05-1606-CR-1405

Appeal from the Johnson Superior Court.
The Honorable Lance D. Hamner, Judge.
Trial Court Cause No.
41D03-1405-CM-582

**Barteau, Senior Judge**

# Statement of the Case

[1]     Mohinder Singh appeals his conviction of operating a motor vehicle while intoxicated in a manner endangering a person, a Class A misdemeanor.[1] We affirm.

# Issue

[2]     Singh raises one issue, which we restate as: whether the trial court abused its discretion in admitting evidence.

# Facts and Procedural History

[3]     On the evening of December 17, 2013, Brett Durham was driving in Johnson County when he stopped at a red light next to a black Camaro. Durham looked over at the Camaro's driver, who was later identified as Singh. The light turned green, and as Durham accelerated he saw the Camaro briefly veer off the road into a snow-covered area before returning to the road. Next, Singh cut across two lanes of traffic and got in front of Durham before turning left into an apartment complex. Durham drove on, but as he looked in his rearview mirror he saw the Camaro hit an obstruction at the entrance to the apartment complex and "go airborne." Tr. Vol. I, p. 41.

---

[1] Ind. Code § 9-30-5-2 (2001).

[4] Durham turned around and drove back to the apartment complex. The Camaro had come to a stop near a pond, and its rear was almost in the water. Singh had left the scene, but Singh's son, Manpreet Singh, was present.

[5] Officer Richard Kelly of the Greenwood Police Department was dispatched to investigate the accident. He encountered Durham and Manpreet at the pond. Manpreet told Officer Kelly that his father had called him to say he had been in an accident. Manpreet further stated that Singh had gone to his apartment. After speaking with Manpreet and Durham, Officer Kelly and Manpreet went to the apartment, where Singh was passed out in a chair.

[6] Singh's wife was present, and she expressed concern that Singh was having a medical emergency because he was not supposed to mix alcohol with his medicine. Officer Kelly requested an ambulance and a portable breath test device to check Singh for the presence of alcohol.

[7] The paramedics arrived as Singh woke up. Singh's portable breath test indicated the presence of alcohol. Singh admitted to Officer Kelly that he was the driver of the Camaro but denied having consumed alcohol. As they conversed, Officer Kelly noted that Singh's eyes were red and watery, his speech was slurred, and he had the odor of alcohol.

[8] The paramedics decided not to take Singh to the hospital. Singh was unable to stand and exhibited poor dexterity, so Officer Kelly helped him up and led him to the police car to take him to the station. Officer Kelly encountered Durham

again at the entrance to the apartment complex. Durham identified Singh as the driver of the Camaro.

[9] At the station, Officer Kelly attempted to have Singh take another breath test for alcohol on a certified Datamaster machine but determined that Singh was uncooperative, as we discuss in more detail below. Officer Kelly then called a deputy prosecutor to request a search warrant for a blood draw and prepared a probable cause affidavit. A judge issued the search warrant after a telephonic hearing, and Officer Kelly drove Singh to a hospital. Although Singh continued to be uncooperative, hospital staff successfully took a blood sample. Testing revealed a blood alcohol concentration of 0.28%.

[10] The State charged Singh with operating a vehicle while intoxicated in a manner endangering a person, a Class A misdemeanor; operating a vehicle with an alcohol concentration of at least .15 grams of alcohol per one hundred milliliters of blood, a Class A misdemeanor; operating a vehicle while intoxicated, a Class C misdemeanor; and operating a vehicle with an alcohol concentration of at least .08 but less than .15 grams of alcohol per one hundred milliliters of blood, a Class C misdemeanor.

[11] Singh filed a "verified petition for hearing on refusal to submit to a certified chemical test." Appellant's App. p. 3. The trial court denied his petition after a hearing. Later, Singh filed a motion to suppress the results of his blood test. The court held a hearing and denied the motion.

A jury determined Singh was guilty of the first three charges but not guilty of operating a vehicle with an alcohol concentration of at least .08 but less than .15 grams of alcohol per one hundred milliliters of blood. The court entered a judgment of conviction on only one charge, operating a vehicle while intoxicated in a manner endangering a person, and sentenced Singh accordingly. This appeal followed.

## Discussion and Decision

Singh claims the trial court should have granted his motion to suppress the blood test results. He appeals following a completed trial, so the issue is more appropriately framed as whether the court abused its discretion in admitting the evidence at trial. *Scisney v. State*, 55 N.E.3d 321, 323 (Ind. Ct. App. 2016), *trans. denied*. We will reverse a ruling on the admission of evidence only for an abuse of that discretion, which occurs when the ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.*

Singh argues the blood test was inadmissible because he claims Officer Kelly intentionally withheld crucial information from the court when seeking the search warrant, thereby violating Singh's rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment requires probable cause for the issuance of a search warrant. *Keeylen v. State*, 14 N.E.3d 865, 871 (Ind. Ct. App. 2014), *clarified on reh'g*, 21 N.E.3d 840 (2014), *trans. denied*. In deciding whether to issue a search warrant, the task of the issuing magistrate is

simply to make a practical, common-sense decision whether, given the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. *Id.*

[15] When a defendant alleges that a finding of probable cause is invalid due to the omission of crucial facts, the defendant must: (1) make a substantial preliminary showing that the police affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit; and (2) show that probable cause would no longer exist if such omitted information were considered by the issuing judge. *Id.* at 872 (quotations omitted). We are concerned only with omissions that are designed to mislead or are made in reckless disregard of whether they would mislead the magistrate. *Id.* (quotations omitted).

[16] In this case, Singh alleged at the suppression hearing that during the probable cause hearing Officer Kelly misled the court by stating that while Singh was at the police station, Officer Kelly had read the implied consent statute to him, and he had refused to take the Datamaster breath test.[2] Officer Kelly did not also tell the court that Singh had later attempted to take the test, but the results were incomplete.

[17] Singh bore the burden of establishing an intent to mislead or reckless disregard for the truth on the part of Officer Kelly. There is no evidence that Officer

---

[2] Singh has not included his motion to suppress in his Appellant's Appendix.

Kelly attempted to mislead the magistrate. One could reasonably surmise that Singh's attempt to take the Datamaster test was not undertaken in good faith, and Officer Kelly could have concluded that Singh was in effect not complying with the implied consent statute. Officer Kelly told the jury that Singh was uncooperative during the process, and while he was on the phone with the deputy prosecutor to seek the search warrant, Singh was "yelling, screaming, cussing at me so loud." Tr. Vol. I, pp. 89-90.

[18] In any event, probable cause would have existed even if Officer Kelly had told the magistrate that Singh had later tried to take the Datamaster test but the results were inconclusive. The inconclusive result did not detract from Officer Kelly's observations that Singh had an odor of alcoholic beverage, slurred speech, bloodshot eyes, and poor manual dexterity, all of which he mentioned in the probable cause affidavit. He also stated in the affidavit that a portable breath test indicated the presence of alcohol. This evidence would have been sufficient to establish probable cause. *See Kolish v. State*, 949 N.E.2d 856, 858-59 (Ind. Ct. App. 2011) (officer's observations of defendant established a fair probability that blood contained evidence of a crime), *trans. denied*.

[19] Singh further argues that Officer Kelly lied in his post-arrest report by stating that a witness, Durham, had told him that he had helped Singh out of his Camaro and watched Singh walk away when, in fact, Durham testified at trial that he did not see Singh at the scene of the accident. The record does not demonstrate that Officer Kelly lied. At trial, Officer Kelly denied making up

the statement in his report. Instead, he acknowledged there was a discrepancy and stated he did not know the origin of the discrepancy.

[20] Further, even if a reasonable person could conclude Officer Kelly lied in the post-arrest report, the report was irrelevant to the determination of probable cause for the blood draw, which occurred before the report was written. Officer Kelly did not state during the probable cause hearing that Durham told him he helped Singh out of the car. Furthermore, Singh cross-examined Officer Kelly about the discrepancy at trial, which allowed the jury to weigh the impact of the discrepancy on Officer Kelly's credibility.

[21] Next, Singh claims the results of the blood draw were inadmissible because Officer Kelly failed to comply with the approved procedures for a Datamaster breath test. Specifically, 260 Indiana Administrative Code section 2-4-1 (2014) provides, in relevant part:

> (4) If 'subject sample incomplete' is printed on the instrument report, perform an additional breath test beginning with STEP TWO and proceeding through STEP SIX. If 'subject sample incomplete' is printed on the instrument report of this additional breath test:
>
> (A) obtain an alternate chemical test for ethanol; or
>
> (B) perform a breath test on another breath test instrument.
>
> If the 'subject sample incomplete' was caused by the lack of cooperation of the subject, the breath test operator should record that the test was refused.

[22] Singh argues that when he tried to take the test and the result was incomplete, Officer Kelly should have tried again and then, depending on the results of the

retest, either tested him a different way or recorded that the test was refused. Instead, Officer Kelly sought a search warrant for a blood draw.

[23] Any deviation from the procedure for the Datamaster breath test did not detract from the issuing magistrate's probable cause determination. Singh had already refused to take the test once and was noncooperative throughout the process. In addition, regardless of the Datamaster test results, Officer Kelly had observed and stated in the affidavit that Singh had an odor of alcoholic beverage, slurred speech, bloodshot eyes, and poor manual dexterity, all of which provided independent probable cause for the search warrant.

[24] Further, there is no evidence that any irregularities in the Datamaster testing process affected the validity of the blood draw test results. In general, "evidence of the alcohol concentration that was in the blood" of a defendant at the time of the violation or within the allowed testing time, "as shown by an analysis of the person's breath, blood, urine, or other bodily substance," is admissible for purposes of offenses including the one at issue here. Ind. Code § 9-30-6-15 (2001). For these reasons, the trial court did not abuse its discretion in admitting the blood draw test results.

## Conclusion

[25] For the reasons stated above, we affirm the judgment of the trial court.

[26] Affirmed.

Kirsch, J., and Bradford, J., concur.