

FILED

Jul 14 2017, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Kimmerly A. Klee
Greenwood, Indiana

Ruth Ann Johnson
Suzy St. John
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Caryn Nieman-Szyper
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Louis Bell, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 14, 2017 <br><br> Court of Appeals Case No. <br> 49A05-1606-CR-1390 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Alicia Gooden, Judge <br><br> Trial Court Cause No. <br> 49G21-1509-F4-32048 |

**May, Judge.**

[1] Louis Bell appeals his convictions of Level 4 felony unlawful possession of a firearm by a serious violent felon,[1] Level 5 felony possession of a narcotic drug,[2] Level 5 felony possession of cocaine,[3] Class B misdemeanor possession of marijuana,[4] and Class C misdemeanor possession of paraphernalia.[5] Bell asserts his convictions must be overturned because the trial court admitted evidence that was obtained unconstitutionally.[6] We affirm.

## Facts and Procedural History

[2] On September 7, 2015, around 1:00 a.m., Officer Justin Gough of the Indianapolis Metropolitan Police Department (IMPD) observed a man, later identified as Bell, riding a bike and trailing another bike by holding its handlebars. Bell was "rapidly just kind of looking around the area constantly looking if someone is watching or if someone is coming towards" him. (Tr. at 73.) Officer Gough explained this behavior is called "scanning." (*Id*. at 14.) State law requires a bike operated at night have a red rear light and a white front light. Ind. Code § 9-21-11-9. The bike Bell was riding did not have this

---

[1] Ind. Code § 35-47-4-5 (2014).

[2] Ind. Code § 35-48-4-6 (2014).

[3] Ind. Code § 35-48-4-6 (2014).

[4] Ind. Code § 35-48-4-11 (2014).

[5] Ind. Code § 35-48-4-8.3 (2015).

[6] We held oral argument on this matter on March 2, 2017, at the Lafayette campus of Ivy Tech Community College. We thank counsel for their advocacy and the students and staff at Ivy Tech for their warm welcome.

lighting.[7] Officer Gough parked down the road in front of Bell and waited for him to approach. When Bell was around twenty feet away, Officer Gough asked Bell, "Hey, do you mind if I talk to you for a minute?" (Tr. at 79.) Bell replied, "What's up?" and rode over to Officer Gough. (*Id.* at 80.)

[3] When Bell approached Officer Gough, Bell was "still scanning and looking around, sweating. His heart was beating extremely fast." (*Id*. at 81.) Officer Gough asked Bell for his name. Officer Gough "r[a]n [Bell's name] through Control" and learned Bell did not have any warrants. (*Id.* at 115.) Officer Gough asked Bell if he was in possession of anything illegal, and Bell said he was not.

[4] Officer Gough observed a suspicious bulge in Bell's front pocket. When he asked Bell about it, Bell "looked away, started scanning again, and then didn't answer [Officer Gough's] question." (*Id.* at 90.) For "[o]fficer safety," (*id.* at 123), Officer Gough "grabbed [Bell's] hands to conduct an outer clothes pat-down." (*Id.* at 90.) The bulge was a gun. Officer Gough asked Bell if he had a permit to carry the gun, and Bell said he did not.

[5] Officer Gough placed Bell under arrest and conducted a search incident to arrest. Officer Gough found a screwdriver with a "removable cap." (*Id.* at 95.) In the cavity under the cap, Officer Gough found "a white plastic baggie [he] believed to be [sic] cocaine [and] another clear plastic bag with a brown rock-

---

[7] Nor did the bike he was trailing have lights.

like substance [he] believed to be heroin." (*Id.*) In a cigarette pack, Officer Gough found a "glass smoking pipe . . . and then two small burnt marijuana cigars." (*Id.* at 98-99.)

[6] The State charged Bell with Level 4 felony unlawful possession of a firearm by a serious violent felon, Level 5 felony possession of a narcotic drug, Level 5 felony possession of cocaine, Class B misdemeanor possession of marijuana, and Class C misdemeanor possession of paraphernalia. Bell filed a motion to suppress the fruits of Officer Gough's search arguing his encounter with Officer Gough was not consensual and, as such, the pat-down violated his rights under the federal and Indiana constitutions. The trial court denied the motion. Following a bench trial, the court convicted Bell of all charges and sentenced him accordingly.

# Discussion and Decision

[7] Bell did not seek interlocutory review of the denial of his motion to suppress but instead appeals following trial. The issue he raises is therefore "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Lundquist v. State,* 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005). We do not reweigh the evidence, and we consider conflicting evidence most

favorable to the trial court's ruling. *Id.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

[8] "Although a trial court's determination of historical facts is entitled to deferential review, we employ a *de novo* standard when reviewing the trial court's ultimate determination of reasonable suspicion and probable cause." *Lindsey v. State,* 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied.*

> In other words, when a trial court has admitted evidence alleged to have been discovered as the result of an illegal search or seizure, we generally will assume the trial court accepted the evidence presented by the State and will not reweigh that evidence, but we owe no deference as to whether that evidence established the constitutionality of a search or seizure.

*Johnson v. State,* 992 N.E.2d 955, 957 (Ind. Ct. App. 2013), *trans. denied.*

## 1. Initial Stop[8]

[9] Bell asserts that although Officer Gough "was within his right to stop Bell for the bicycle violation," (Appellant's Br. at 19), he was actually investigating

---

[8] The parties disagree whether the interaction between Bell and Officer Gough began as a consensual encounter, which would "not compel Fourth Amendment analysis." *McNeal v. State*, 62 N.E.3d 1275, 1280 (Ind. Ct. App. 2016). The trial court concluded the "encounter between [Bell] and Officer Gough, leading up to the 'pat down' search, was a consensual one[.]" (App. Vol. II at 86.) Thereafter, the court concluded that "even if the encounter was not consensual . . . Officer Gough had reasonable suspicion to stop [Bell] based upon the totality of the circumstances." (*Id.*) Even if we presume Bell approached Officer Gough voluntarily, the consensual nature of the stop quickly evolved into an investigatory stop. *See Combs v. State*, 851 N.E.2d 1053, 1059 (Ind. Ct. App. 2006) (consensual stop evolved into an investigatory stop on request for identifying information), *trans. denied.* Thus, we turn to whether Officer Gough had at least reasonable suspicion to stop Bell.

whether the second bike was stolen.[9]  However, as the State notes, even if the traffic stop was pretext to investigate the possibility the second bike was stolen, Indiana law allows pretextual traffic stops when the officer has observed a traffic violation.  *See Mitchell v. State*, 745 N.E.2d 775, 787 (Ind. 2001) (pretextual traffic stops not unconstitutional "even if the officer may have an ulterior motive of furthering an unrelated criminal investigation").

[10]  In Indiana, "[w]henever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time[.]"  Ind. Code § 34-28-5-3.  "[A] traffic stop and limited search is permissible where an officer has at least reasonable suspicion that a traffic law, or other law, has been violated."  *Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013), *reh'g denied*.

[11]  In the middle of the night, Bell was riding a bike that did not have the lights required by law for a bike to be ridden at night.[10]  Officer Gough thus had reasonable suspicion to detain Bell for the traffic violation.  *See*, *e.g.*, *State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014) ("If an officer observes a driver commit a traffic violation, he has probable cause - and thus also the lesser included

---

[9] Bell asserts Officer Gough was on a "fishing expedition" in order to "target[] citizens in bad neighborhoods."  (Appellant's Br. at 25.)  Bell points to no evidence to support his assertion Officer Gough was "targeting citizens;" nor did we see any such evidence in our review of the record.

[10] Officer Gough acknowledged Bell had a white desk light clipped to the back of his shirt, but that did not satisfy the requirement of the statute.  *See* Ind. Code § 9-21-11-9 (requiring red back light and white front light on bike operated at night).

reasonable suspicion [required for a *Terry* stop] - to stop that driver."); *see also* *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006) (even a minor traffic violation "creates probable cause to stop the driver"). Thus, Bell has not demonstrated the trial court erred in determining the initial stop was constitutional.

## 2. Pat-Down Search

[12] The parties disagree whether Officer Gough's pat-down of Bell violated our federal and state constitutions. We begin with the federal analysis.

### A. Fourth Amendment

[13] The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a warrant supported by probable cause. U.S. Const. amend. IV. To deter State actors from violating that prohibition, evidence obtained in violation of the Fourth Amendment generally is not admissible in a prosecution of the citizen whose right was violated. *Clark v. State,* 994 N.E.2d 252, 260 (Ind. 2013). The State has the burden of demonstrating the admissibility of evidence collected during a seizure or search. *Id.*

[14] The trial court concluded Officer Gough had reasonable suspicion to pat Bell down for weapons. Bell argues Officer Gough did not have reasonable suspicion to conduct a pat-down search because Bell cooperated with Officer Gough's request to talk. Bell asserts his sweating and fast heart-rate could have been due to his bike-riding. The State asserts the "pat-down was proper under

the Fourth Amendment" because Officer Gough had a reasonable belief his safety was in danger. (Appellee's Br. at 16.)

[15] To conduct a pat-down during a *Terry* stop, an "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "In addition, a police officer 'justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' is entitled to conduct a limited patdown [sic] search of the suspect's outer clothing to search for a weapon." *Jackson v. State*, 669 N.E.2d 744, 747 (Ind. Ct. App. 1996) (quoting *Terry*, 392 U.S. at 24).

[16] Here, the encounter occurred after 1:00 a.m. in a high-crime area, Bell had a suspicious bulge in his pocket, and Bell did not answer Officer Gough's question about the bulge in his pocket. Officer Gough had observed Bell was "still scanning and looking around, sweating [and h]is heart was beating extremely fast." (Tr. at 81.) Because Bell did not answer Officer Gough's question regarding the bulge in his pocket, Officer Gough believed Bell was "hiding something or being evasive." (*Id*. at 90.) Under these circumstances, we conclude it was reasonable for Officer Gough to be concerned for his own and the public's safety.[11] The pat-down search was not a violation of Bell's

---

[11] The dissent notes the determination of sufficient authorization to conduct a lengthier traffic stop and a pat-down search is "fact sensitive." Slip op. at ¶ 23. We agree. We also agree that reasonable suspicion cannot

Fourth Amendment rights, and the trial court did not err in admitting the handgun discovered during the pat-down or the other evidence seized during the search incident to arrest. *See Scisney v. State*, 55 N.E.3d 321, 325 (Ind. Ct. App. 2016) (pat-down "constitutionally permissible" when Scisney did not respond to a question regarding whether he had any weapons), *trans. denied*.

### B. Article 1, Section 11

[17]   The language of Article 1, Section 11 tracks the Fourth Amendment; however, "Indiana has explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure." *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind. 2005). Instead, the legality of a search "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Id.* Reasonableness is determined by balancing: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion imposed by the search; and (3) the extent of law enforcement needs. *Id.* at 361.

[18]   The trial court concluded the "limited pat down search of [Bell] did not violate [] Article I, Section 11 of the Indiana Constitution." (App. Vol. II at 86.) Bell

---

be created solely by Bell's presence in a high-crime area, *see Clark*, 994 N.E.2d at 266, that we must be careful placing too much weight on a citizen's nervousness when confronted by police, *see Pinner v. State*, 74 N.E.3d 226, 233 (Ind. 2017), and that the law requires a police officer to have particularized suspicion that a person is armed and is a threat to safety. *See Patterson v. State*, 958 N.E.2d 478, 486 (Ind. Ct. App. 2011). We disagree with the dissent about the implications of those statements of law for the case at hand. Bell's commission of a traffic infraction gave Officer Gough probable cause to stop Bell, and as we explained above, the other circumstances provided Officer Gough particularized suspicion that Bell posed a threat to Officer Gough's safety.

argues he should not have been patted-down because the stop should not have continued after Officer Gough found Bell did not have active warrants. In support, he cites *State v. Richardson*, 927 N.E.2d 379, 384 (Ind. 2010), in which our Indiana Supreme Court held observation of an "unusual bulge" is not enough to provide reasonable suspicion. The facts here are distinguishable because Officer Gough also observed Bell was nervous, he was scanning the area, and he did not answer Officer Gough's question about the bulge in his pocket.

[19] Applying the *Litchfield* factors to the facts, we hold the warrantless search did not violate Article 1, Section 11 of the Indiana Constitution. The degree of suspicion was high because Bell's bikes did not have the required lighting and Officer Gough observed Bell "scanning and looking around, sweating. His heart was beating extremely fast." (Tr. at 81.) When Officer Gough asked Bell about the bulge in his pocket, Bell "looked away, started scanning again, and then didn't answer [Officer Gough's] question." (*Id.* at 90.) The intrusion into Bell's privacy was minimal as it was merely "an outer clothes pat-down." (*Id.*) Finally, the law enforcement needs were high given the circumstances leading up to the pat-down. Officer Gough was justified to feel concern for officer and public safety. Under the totality of circumstances, we conclude the pat-down was reasonable. As such, Bell's Article 1, Section 11 rights were not violated

and the admission of evidence found thereafter in the search was not error.[12] *See Johnson v. State*, 38 N.E.3d 658, 664 (Ind. Ct. App. 2015) ("outer-clothing pat down" of non-compliant defendant was not a violation of Section 11), *trans. denied*.

# Conclusion

[20] Officer Gough had reasonable suspicion to stop Bell due to the traffic violation created by the lack of lights on the bicycle. Once stopped, neither Bell's Fourth Amendment nor Article 1, Section 11 rights were violated by the pat-down search. Thus, admission of the evidence was not an abuse of discretion. Accordingly, we affirm Bell's convictions.

[21] Affirmed.

Kirsch, J., concurs.

Robb, J., dissents with separate opinion.

---

[12] Bell also claims the State is using his possession of a screwdriver as an after-the-fact justification for Officer Gough's decision to search him for officer safety. (Appellant's Br. at 23.) In support, he cites *Webb v. State*, 714 N.E.2d 787, 789 (Ind. Ct. App. 1999), in which the State "imputed to [the officer] a new theory for the stop despite [the officer's] own testimony as to why he stopped Webb." Officer Gough's probable cause affidavit indicates the reason for the stop as "the city ordinance infraction, as well as suspicious behavior." (App. Vol. II at 23.) Officer Gough testified during the suppression hearing that his reason for conducting the pat-down was because Bell was acting nervous, "had a bulge in his front right pocket as well as a screwdriver in his rear right pocket," (Tr. at 26), and would not answer questions about whether that bulge was a weapon. Thus, the State did not impute to Officer Gough a justification that was not advanced by Officer Gough himself, and *Webb* is not relevant.

# IN THE
# COURT OF APPEALS OF INDIANA

Louis Bell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
49A05-1606-CR-1390

**Robb, Judge, dissenting.**

[22] I agree with the majority that Officer Gough's initial stop of Bell was appropriate because he observed Bell committing a traffic infraction. However, I disagree with the majority that Bell's constitutional rights were not violated by the pat-down search that followed. Therefore, I respectfully dissent.

[23] As the majority states, Officer Gough observed Bell committing a traffic infraction, giving him at least reasonable suspicion for the initial stop of Bell. *See* slip op. at ¶ 11. But it is important to note here that an infraction is not a crime. *See, e.g., Smith v. State*, 38 N.E.3d 218, 223 (Ind. Ct. App. 2015) (noting traffic infractions are civil, rather than criminal, in nature). The permissible scope of Officer Gough's encounter with Bell must be viewed through that lens. A seizure for a traffic violation justifies an investigation of that violation, but

"[a] routine traffic stop . . . is a relatively brief encounter" that is more analogous to a *Terry* stop than to a formal arrest. *Knowles v. Iowa*, 525 U.S. 113, 117 (1998). Thus, "[l]ike a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Rodriguez v. U.S.*, 135 S. Ct. 1609, 1614 (2015) (quotation and citations omitted). Because addressing the infraction is the purpose of the stop, the stop may last no longer than is necessary to effectuate that purpose. *Id.* The Indiana Code recognizes this limitation:

> (a) Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to:
>
> > (1) inform the person of the allegation;
> >
> > (2) obtain the person's:
> >
> > > (A) name, address, and date of birth; or
> > >
> > > (B) driver's license, if in the person's possession; and
> >
> > (3) allow the person to execute a notice to appear.

Ind. Code § 34-28-5-3. Moreover, "it [is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly . . . ." *U.S. v. Sharpe*, 470 U.S. 675, 686 (1985).

A seizure that is lawful at the beginning may nonetheless violate the Fourth Amendment "if its manner of execution unreasonably infringes" on protected interests. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). What is sufficient to authorize police to stop a person must be determined by considering the totality of the circumstances—"the whole picture." *U.S. v. Cortez*, 449 U.S. 411, 417 (1981). That determination is necessarily fact sensitive. *Clark v. State*, 994 N.E.2d 252, 264 (Ind. 2013).

[24] In ruling on admission of evidence at trial following the denial of a pre-trial motion to suppress, the trial court must consider the foundational evidence presented at trial as well as any evidence from the suppression hearing that is favorable to the defendant and uncontradicted at trial. *Gerth v. State*, 51 N.E.3d 368, 372 (Ind. Ct. App. 2016). Here, the evidence from both hearings shows Officer Gough saw Bell riding his bike in the late evening hours in a high crime area, trailing another bike and "looking at the area back and forth at a very rapid pace that wasn't normal." Tr. at 14. Officer Gough noticed Bell did not have the proper lighting on his bike but also suspected Bell was involved in other criminal activity due to the presence of the second bike and decided he wanted to investigate the situation. Officer Gough stated Bell was "free to disregard" his request to talk, but had Bell not responded positively, "I would have gotten into my police vehicle and initiated my lights and made a traffic stop." *Id.* at 37-38; *see also id.* at 80-81. When Bell agreed to speak with Officer Gough, the officer radioed in at 1:09 a.m. that he was doing an investigation and gave control Bell's name. Less than two minutes later, control determined

Bell had no outstanding warrants. As Officer Gough and Bell were talking, Officer Gough noticed Bell was sweating "extremely bad," continued to scan the area, and was "extremely nervous because I could . . . see almost where his heart was beating in his chest back and forth." *Id.* at 22; *see also id.* at 81-82. Officer Gough also noticed a screwdriver in Bell's back pocket and a "bulge" in his front pocket. *Id.* at 26; 83. Officer Gough asked Bell if he had anything illegal on him or anything the officer should know about, and Bell responded, "no." *Id.* at 26; 89. Officer Gough then specifically asked Bell about the bulge in his pocket; Bell did not offer an answer. At that point, Officer Gough believed Bell was "hiding something," *id.* at 90, grabbed Bell's hands, pulled them behind his back, and began the pat-down that ultimately uncovered a firearm approximately thirty minutes later. *See id.* at 118 (control determined at 1:41 a.m. that Bell had prior convictions after Officer Gough found the gun and requested information).

[25] Based on his testimony at both the suppression hearing and Bell's trial, at no time did Officer Gough talk with Bell about the infraction giving rise to the stop, nor did he ask him about the second bike. *See Sharpe,* 470 U.S. at 686. Rather than addressing the purpose of the stop, Officer Gough asked an open-ended question about whether Bell had anything illegal on him, and when Bell responded in the negative, asked more specifically about the bulge in Bell's pocket. I do not discount the legitimate concern for officer safety, but I do not believe the evidence supports the conclusion that reasonable suspicion developed for Officer Gough to conduct the pat-down of Bell even after Bell

refused to answer the officer's question. "[I]n order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general 'hunches' or unparticularized suspicions." *Stalling v. State*, 713 N.E.2d 922, 924 (Ind. Ct. App. 1999) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

[26] Officer Gough testified he conducted the pat-down because of Bell's "behavior as well as the bulge in his pocket that he didn't answer my question about." Tr. at 123. Bell was riding a bike in a high crime area, pulling another bike alongside, approaching an intersection with multiple lanes in each direction. That Bell was sweating and looking around to assess the area for possible threats to *his own* safety is neither unreasonable nor immediately indicative of suspicious behavior. Nor, necessarily, is the fact that Officer Gough believed he was nervous. Nervousness is not enough to constitute reasonable suspicion, as "it is common for most people to exhibit signs of nervousness when confronted by a law enforcement officer whether or not the person is currently engaged in criminal activity." *Pinner v. State*, 74 N.E.3d 226, 233 (Ind. 2017) (quotation omitted). In short, I do not believe Officer Gough's description of Bell's behavior supports reasonable suspicion that Bell posed a danger to the officer or others.

[27] I acknowledge that "a set of individually innocent facts, when observed in conjunction, can be sufficient to create reasonable suspicion of criminal activity." *Id.* at 534. But I do not believe Bell's behavior coupled with Officer Gough's observation of a "bulge" in Bell's pocket is sufficient, either. Officer Gough never described the bulge in any detail whatsoever. He simply repeated

several times over the course of the suppression hearing and bench trial that Bell had a bulge in his pocket. On the basis of that testimony, the bulge could have been as small as a wad of tissues or bills, it could have been keys or a wallet. *Cf. State v. Richardson*, 927 N.E.2d 379, 381 (Ind. 2010) (officer describing a "very large, unusual bulge" in defendant's pocket); *Dunson v. State*, 64 N.E.3d 250, 252 (Ind. Ct. App. 2016) (officer testifying he noticed a bulge in the defendant's groin area stated, "there was a flat top to it with a shirt over top that. Ah, there's a larger bulge beneath that about the waist line . . . ."). In short, Officer Gough gave no reason *why* he found the bulge suspicious and therefore did not establish a reasonable belief that Bell was hiding a weapon that could be used to harm Officer Gough or others in the area.[13]

[28] Finally, Bell's failure to answer Officer Gough's specific question about the bulge does not support reasonable suspicion of criminal activity. Defendants are not obligated to answer questions unrelated to the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 497-98 (1983) (noting that during a *Terry* stop, refusal to answer questions does not, without more, furnish reasonable suspicion); *Washington v. State,* 898 N.E.2d 1200, 1205 (Ind. 2008) (noting officer's brief questioning during a traffic stop about whether the defendant had any weapons or drugs did not violate the Fourth Amendment because

---

[13] Bell did have a screwdriver. However, it was in plain view, and in the context of this stop, Bell was likely carrying the screwdriver as a tool. Based on Bell's conduct as described by Officer Gough during the stop, there is no reason to believe Bell gave Officer Gough any signs or signals he might reach for the screwdriver to wield as a weapon.

defendant did not have to answer the questions). And unlike the situation in *Scisney v. State*, 55 N.E.3d 321 (Ind. Ct. App. 2016), there was no other basis for finding Bell's failure to answer suspicious. In *Scisney,* officers investigating a call of shots fired in a high crime area spotted the defendant walking with a man who met the description of the suspect. The defendant touched his waistline when he observed officers and then as he walked toward one officer, did not respond when asked if he had any weapons. On the basis of all of those facts, we found the pat-down did not constitute a constitutional violation. *Id.* at 324.

[29] Recently, our supreme court decided the case of *Jacobs v. State*, No. 49S02-1509-CM-31258 (Ind. June 29, 2017). In *Jacobs,* there had been multiple reports of shots fired by youths wearing red clothing near an apartment complex and nearby park in a high crime area. Police increased their focus on that area, and two days later, an officer saw several people in the park that he believed should have been in school. Some of the people were wearing red, and although the defendant briefly had a red shirt slung over his shoulder, he was not wearing red. When the group observed a park ranger in a marked car patrol the area, the defendant quickly walked away, only to return after the ranger left the area. The officer then called for backup and when additional marked cars arrived, the defendant again quickly walked away from the assembled group. Officers followed in their car and ordered the defendant to stop. Instead, he continued to walk away, at which point the officers exited their patrol car and ordered the defendant to the ground. The defendant complied and was handcuffed; when

defendant got to his feet, the outline of a handgun was clearly visible in his pocket. The defendant's objection to the officers' testimony and admission into evidence of the handgun were overruled at his bench trial and he was convicted of possession of a handgun without a license, a Class A misdemeanor. On appeal, our supreme court held the search was constitutionally impermissible under both the United States and Indiana Constitutions. *See Jacobs*, slip op. at 1. Although the officer reasonably believed the defendant was a truant, by the time of the stop, school was out of session and suspicion of truancy could not justify the stop. That the defendant turned and left the park upon seeing the park ranger is insufficient to establish reasonable suspicion. *Id.* at 5. And the fact the defendant temporarily displayed a red shirt—a known gang color— when juveniles wearing red had fired shots two days earlier in the same area "require[s] one inferential leap too many" because at the time of the stop, the defendant was not wearing red and "police had no articulable suspicion that *[the defendant] specifically* was involved in any way with the shooting . . . ." *Id.* Although "taken as a whole," the defendant's actions were suspicious and the defendant was in fact found to be carrying an unlicensed handgun, "at the time police moved to detain [the defendant], police did not have a reasonable suspicion that he had engaged in or was about to engage in any *criminal* conduct." *Id.* at 6.

[30]   Here, there were no reports of a stolen bike or other criminal activity in the area that Officer Gough believed Bell could have been involved with, Bell never made a move toward either the visible screwdriver or the alleged "bulge," and

his behavior was similar to the behavior of most people stopped by the police. I believe after Officer Gough had confirmation Bell had no outstanding warrants and asked Bell if he had anything illegal on him and Bell said he did not, Officer Gough should have written a citation for the traffic infraction if that was his intent,[14] and allowed Bell to go on his way. When "taken as a whole," even though Bell was committing an infraction and even if his actions were suspicious, Officer Gough had only a hunch, not a reasonable suspicion, that Bell might be involved in *criminal* activity when he stopped him. Pursuant to *Jacobs*, this is insufficient to overcome Fourth Amendment protections. *See id.*

[31] Again, I do not take lightly the peril police officers are placed in every day. However, "[a] generalized suspicion that an individual presents a threat to an officer's safety is insufficient to authorize a pat-down search," *Patterson v. State*, 958 N.E.2d 478, 486 (Ind. Ct. App. 2011), and I believe that is all the evidence here shows. I would hold the Fourth Amendment prohibited the pat-down search of Bell.[15]

---

[14] Officer Gough testified at the suppression hearing that he was not intending to issue a citation for the lack of bicycle lights because Bell stopped and talked with him. Tr. at 41.

[15] Likewise, based on the totality of the circumstances, I believe the Indiana Constitution also prohibited the pat-down.