ATTORNEYS FOR APPELLANT
Ruth Ann Johnson
Darren D. Bedwell
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Christina D. Pace
Deputy Attorneys General
Indianapolis, Indiana



FILED

Jun 29 2017, 11:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No.  49S02-1706-CR-438

JORDAN JACOBS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G10-1509-CM-31258
The Honorable Linda Brown, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1601-CR-19

**June 29, 2017**

**Massa, Justice.**

Jordan Jacobs was found guilty of Class A misdemeanor possession of a handgun without a license, and appeals his conviction under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution, contending the search was constitutionally impermissible.  We agree, and reverse.

**Facts and Procedural History**

On August 31, 2015, there were multiple reports of shots fired by youths wearing red clothing, a known gang color, near an apartment complex and neighboring park in a "high crime" area of Indianapolis. Tr. at 11. In response, police focused additional attention on the area, and at around 2:00PM two days later in the park, Officer Terry Smith "observed several juveniles who looked like they should be in school," which included Jacobs, age 18. Tr. at 7. Smith sat in an unmarked car and observed the group for "several hours", which also included "several adult males." Tr. at 7. Some members of the group were wearing red, but Jacobs was not, though at one point he had a red t-shirt slung over his left shoulder. They also observed a park ranger in a marked car patrol the area, at which point Jacobs and another individual quickly walked away, and then returned after the patrol car had left. At this point Smith called for backup to "assist [] in stopping them." Tr. at 8. When the additional marked police cars arrived, Jacobs and his companion again quickly walked away from the group; Officers Smith and Jeremiah Casavan pulled up near Jacobs, Smith got out of his car and ordered him to stop. Jacobs did not comply, and continued to walk away, at which point Officer Casavan exited his vehicle and both officers ordered Jacobs to the ground. Jacobs now complied; Officer Casavan handcuffed Jacobs while he was on the ground but "told him he was not under arrest." Tr. at 24. After Jacobs got off the ground, the outline of a handgun was clearly visible in his pocket, which Casavan removed.

Jacobs was charged with one count of Class A misdemeanor possession of a handgun without a license, and at his bench trial objected to the testimony of Officers Smith and Casavan, and the admission of the handgun into evidence, on the grounds that the officers did not have reasonable suspicion to stop him under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court denied the motion, found Jacobs guilty as charged, and sentenced him to one year probation. A divided panel of our Court of Appeals affirmed, finding that Jacobs' behavior in evading police in a high crime area was sufficient to give rise to a reasonable suspicion that crime was afoot, particularly since the officers reasonably believed "Jacobs was committing the status offense of truancy." Jacobs v. State, 62

N.E.3d 1253, 1261 n.3 (Ind. Ct. App. 2016). We hereby grant Jacobs' petition to transfer and vacate the Court of Appeals' decision below. Ind. Appellate Rule 58(A).

## Standard of Review

Admission of evidence is generally left to the discretion of the trial court, and thus we review admissibility challenges for abuse of that discretion. Guilmette v. State, 14 N.E.3d 38, 40 (Ind. 2014). When, however, admissibility turns on questions of constitutionality relating to the search and seizure of that evidence, our review is *de novo*. Id. at 40–41. "We review a trial court's denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant." Robinson v. State, 5 N.E.3d 362, 365 (Ind. 2014) (citing Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006)). Nevertheless, we defer to the trial court's factual determinations unless they are clearly erroneous. Meredith v. State, 906 N.E.2d 867, 869 (Ind. 2009).

## Police Lacked Reasonable Suspicion to Stop Jacobs Under the Fourth Amendment.

The Fourth Amendment states that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Accordingly, a warrantless search or seizure is per se unreasonable, and the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies." M.O. v. State, 63 N.E.3d 329, 331 (Ind. 2016) (internal quotations omitted). One of the most recognized such exceptions is derived from Terry v. Ohio, which permits a brief

investigatory stop "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot[.]" 392 U.S. 1, 30 (1968). "When determining whether an officer had reasonable suspicion for a Terry stop, we consider whether the totality of the circumstances presented a particularized and objective basis for the officer's belief that the subject was engaged in criminal activity." State v. Keck, 4 N.E.3d 1180, 1184 (Ind. 2014) (internal quotations omitted). "[I]n order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general 'hunches' or unparticularized suspicions." Stalling v. State, 713 N.E.2d 922, 924 (Ind. Ct. App. 1999) (quoting Terry, 392 U.S. at 27).

In Stalling, an officer approached a group congregated in a high crime area at noon, because he recognized one member of the group as a truant. Id. at 923. Stalling, an adult in the group, turned and walked away, and the officer "observed him move as if to place something into the waistband of his pants near the belt buckle." Id. Officers then detained Stalling and patted him down, finding cocaine. Id. at 924. Our Court of Appeals invalidated the search on Fourth Amendment grounds: "Although Stalling, along with the other members of the group, turned and walked away upon seeing the officers, the fact that one turns away from the police in a high crime neighborhood is not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity." Id.

Here, Officer Smith reasonably believed Jacobs to be a truant, which is a status offense that would have permitted an investigatory stop—when Smith first observed Jacobs in the park, at 2:00PM. But "several hours" later, when Smith actually approached, Jacobs' status as a truant had expired since school had already let out for the day, and thus was not a proper justification for the stop. Tr. at 7. Moreover, although Jacobs turned and left the park when a patrol car went by, only

4

to return after it left, that does not in and of itself "establish a reasonable suspicion of criminal activity."[1] Stalling, 713 N.E.2d at 924.

Finally, we address the issue of Jacobs' wardrobe. Jacobs temporarily draped a red t-shirt over his shoulder, though he was not wearing it at the time of his arrest, and some of his cohorts in the park were also wearing red, which Officer Smith testified was indicative of "gang association." Tr. at 7. And two days earlier, juveniles wearing red committed a shooting in the same area. However, these events taken in sequence still require one inferential leap too many to justify a Terry stop. Jacobs' display of a red shirt among those dressed in red could indeed give rise to a reasonable suspicion of gang affiliation, and the description of the suspects in the earlier shooting (coupled with its proximity) could give rise to a reasonable suspicion that it was committed by members of that same gang—but at the time of the stop, police had no articulable suspicion that *Jacobs specifically* was involved in any way with the shooting, and his mere suspected affiliation with the suspected gang is not enough to justify a Terry stop on its own. Cf. Klein v. State, 698 N.E.2d 296, 300 (Ind. 1998) (finding constitutional Indiana Code section 35-45-9-3 (1998) ("A person who knowingly or intentionally actively participates in a criminal gang commits criminal gang activity, a Class D felony."), and holding that "[a]n individual may not be

---

[1] This distinction between "walking away" and "flight" is well-recognized in relevant Indiana and federal jurisprudence. See Illinois v. Wardlow, 528 U.S. 119, 125 (2000) ("[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. And any refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure. But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.") (internal quotations omitted); see also Platt v. State, 589 N.E.2d 222, 226 (Ind. 1992) ("The whole picture shows that Deputy Ruch pulled up behind a motorist by the side of a country road in the dead of night. The motorist immediately fled—with great haste—before the deputy even had a chance to get out of his car and see what was going on. These facts alone were sufficient to give rise to a reasonable suspicion in the mind of a trained police officer that some further investigation was warranted. Flight at the sight of police is undeniably suspicious behavior.").

prosecuted for mere status, but the statute does not punish for status alone. Membership in a gang, by itself, does not provide the basis for prosecution for criminal gang activity. The State must prove that the individual was aware of the gang's criminal purpose." (internal citation omitted)). Jacobs' display of a red garment (which he was never wearing, and did not have at the time police approached), while standing among those clad in red, was thus insufficient to justify an investigatory stop under the Fourth Amendment.

We concur with the Court of Appeals' observation that Jacobs' actions, taken as a whole, were "indeed suspicious." Jacobs, 62 N.E.3d at 1261. This is bolstered by the fact that Jacobs was actually carrying an unlicensed handgun. Nevertheless, at the time police moved to detain Jacobs, police did not have a reasonable suspicion that he had engaged in or was about to engage in any *criminal* conduct: "[M]erely looking suspicious is not sufficient to overcome Fourth Amendment protections[.]" Stalling, 713 N.E.2d at 925 (internal quotation omitted). Accordingly, we find this stop violated Jacobs' Fourth Amendment rights.


**Police Lacked Reasonable Suspicion to Stop Jacobs Under Article 1, Section 11.**

While Article 1, Section 11 of the Indiana Constitution is virtually identical to the Fourth Amendment in its text, we utilize a different method of interpretation: "The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005) (internal citation omitted). Accordingly, we consider the following three non-exclusive factors in conducting a reasonableness analysis of warrantless searches: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Id. at 361. And ultimately it is the State's burden to demonstrate the reasonableness of the intrusion. State v. Gerschoffer, 763 N.E.2d 960, 965 (Ind. 2002).

As discussed with respect to the Fourth Amendment, while these officers had sufficient cause to be suspicious of Jacobs in general, that suspicion was not sufficiently linked to any articulable criminal activity; the first Litchfield factor thus weighs against the State. Second, the State acknowledges that "the intrusion was not exactly minimal because the police instructed [Jacobs] to lie on the ground, handcuffed him, and then took him to the area where the rest of the group was located." State's Br. at 13. Finally, the State contends the needs of law enforcement were high based on the recent shootings in the area, the juvenile nature of the group, and their display of gang colors. However, as detailed above, Jacobs was an adult, and there was nothing apparent to connect him to the earlier shootings; thus the articulated needs of law enforcement were low with respect to Jacobs individually. On balance, therefore, we find the State's detention and search of Jacobs unreasonable under Article 1, Section 11 of the Indiana Constitution.

## Conclusion

For the foregoing reasons, we reverse Jacobs' conviction for Class A misdemeanor possession of a handgun without a license, and remand for further proceedings consistent with this opinion.

Rush, C.J., and Slaughter, J., concur.
David, J., concurs in result.