Robb, Judge,
dissenting.
I agree with the majority that Officer Gough’s initial stop of Bell was appropriate because he observed Bell committing a traffic infraction. However, I disagree with the majority that Bell’s constitutional rights were not violated by the pat-down search that followed. Therefore, I respectfully dissent. •
As the majority states, Officer Gough observed Bell committing a traffic infraction, giving him at least reasonable suspicion for the initial stop of Bell. See op. at ¶ 11. But it.is important to note here that an infraction is not a crime. See, e.g., Smith v. State, 38 N.E.3d 218, 223 (Ind. Ct. App. 2015) (noting traffic infractions are civil, rather than criminal, in nature). The permissible scope of Officer Gough’s encounter with Bell must be viewed through that lens. A seizure for a traffic violation justifies an investigation of that violation, but “[á] routine tr'affic stop ... is a relatively brief encounter” that is more analogous to a Terry stop than to a formal arrest. Knowles v. Iowa, 525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). Thus, “[l]ike a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure’s mission—to address the traffic violation that warranted the stop ... and attend to related safety concerns.” Rodriguez v. U.S., — U.S. -, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015) (quotation and citations omitted). Because addressing the infraction is the purpose of the stop, the stop may last no longer than is necessary to effectuate that purpose. Id. The Indiana Code recognizes this limitation:
(a) Whenever a law enforcement officer believes in good faith that a person has committed an infraction *240 or ordinance violation, the law enforcement officer may detain that person for a time sufficient to:
(1) inform the person of the allegation;
(2) obtain the person’s:
(A) name, address, and date of birth; or
(B) driver’s license, if in the person’s possession; and
(3) allow the person to execute a notice to appear.
Ind. Code § 34-28-5-3. Moreover, “it [is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm, or dispel their suspicions quickly....” U.S. v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). A seizure that is lawful at the beginning may nonetheless violate the Fourth Amendment “if its manner of execution unreasonably infringes” on protected interests. Illinois v. Caballes, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). What is sufficient to authorize police to stop a person must be determined by considering the totality of the circumstances—“the whole picture.” U.S. v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). That determination is necessarily fact sensitive. Clark v. State, 994 N.E.2d 252, 264 (Ind. 2013).
In ruling on admission of evidence at .trial following the denial of á pre-trial motion to suppress, the trial court must consider the foundational evidence presented at trial as well as any evidence from the suppression hearing that is favorable to the defendant and uncontradicted at trial. Gerth v. State, 51 N.E.3d 368, 372 (Ind. Ct. App. 2016). Here, the evidence from both hearings shows Officer Gough saw Bell riding his bike in the late evening hours in a high crime area, trailing another bike and “looking at the area back and forth at a very rapid pace that wasn’t normal.” Tr. at 14. Officer Gough noticed Bell did not have the proper lighting on his bike but also suspected Bell was involved in other criminal activity due to the presence of the second bike and decided he wanted to investigate the situation. Officer Gough stated Bell was “free to disregard” his request to talk, but had Bell not responded- positively, “I would have gotten into my police vehicle and initiated my lights and made a traffic stop.” Id. at 37-38; see also id. at 80-81. When Bell agreed to speak with Officer Gough, the officer radioed in at 1:09 a.m. that he was doing an investigation and gave control Bell’s name. Less than two miriutbs later, control determined'Bell had no -outstanding warrants, As Officer Gough and Bell were talking, Officer Gough noticed Bell was sweating “extremely bad,” continued to scan the area, and was “extremely nervous because I could ... see almost where his heart was beating in his chest back and forth.” Id. at 22; see also id. at 81-82. Officer Gough also noticed a screwdriver in Bell’s back pocket and a “bulge” in his front pocket. Id. at 26; 83. Officer Gough asked Bell if he had anything illegal on him or anything the officer should know about, and Bell responded, “no.” Id. at 26; 89, Officer Gough then specifically asked Bell about the bulge in his pocket; Bell did not offer an answer. At that point, Officer Gough believed Bell was “hiding something,” id. at 90, grabbed Bell’s - hands, pulled them behind his back, and began the pat-down that ultimately uncovered a firearm approximately thirty minutes later. See id. at 118 (control determined at 1:41 a.m. that Bell had prior convictions after Officer Gough found- the gun and requested information).
Based on his testimony at both the suppression hearing and Bell’s trial, at no time did Officer -Gough talk with Bell about the infraction giving rise to the stop, *241 nor did he ask him about the second bike. See Sharpe, 470 U.S. at 686, 105 S.Ct. 1568. Rather than addressing the purpose of the stop, Officer Gough asked an open-ended question about whether Bell had anything illegal on him, and when Bell responded in the negative, asked more specifically about the bulge in Bell’s pocket. I do not discount the legitimate concern for officer safety, but I do not believe the evidence supports the conclusion that reasonable suspicion developed for Officer Gough to conduct the pat-down of Bell even after Bell refused to answer the officer’s question. “[I]n order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer’s general ‘hunches’ or unparticularized suspicions.” Stalling v. State, 713 N.E.2d 922, 924 (Ind. Ct. App. 1999) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
Officer Gough testified he conducted the pat-down because of Bell’s “behavior as well as the bulge in his pocket that he didn’t answer my question about.” Tr. at 123. Bell was riding a bike in a high crime area, pulling another bike alongside, approaching an intersection with- multiple lanes in each direction. That Bell was sweating and looking around to assess the area for possible threats to his own safety is neither unreasonable nor immediately indicative of suspicious behavior. Nor, necessarily, is the fact that Officer,Gough believed he was nervous. Nervousness is not enough to constitute reasonable suspicion, as “it is common for most people to exhibit signs of nervousness when confronted by a law enforcement officer whether or not the person is currently engaged in criminal activity.” Pinner v. State, 74 N.E.3d 226, 233 (Ind. 2017) (quotation omitted). In short, I do not believe Officer Gough’s description of Bell’s behavior supports reasonable suspicion that Bell posed a danger to the officer or others.
I acknowledge that “a set of individually innocent facts, when observed in conjunction, can be sufficient to create reasonable suspicion of criminal activity.” Id. at 534. But I do not believe Bell’s behavior coupled with Officer Gough’s observation of a “bulge” in Bell’s pocket is sufficient, either. Officer Gough never described the bulge in any detail whatsoever. He simply repeated several times over the course.of the suppression hearing and bench trial that Bell had a bulge in his pocket. On the basis of that testimony, the bulge could have been as small as a wad of tissues or bills, it could have been, keys or a wallet. Cf. State v. Richardson, 927 N.E.2d 379, 381 (Ind. 2010) (officer describing a “very large, unusual bulge” in defendant’s pocket); Dunson v. State, 64 N.E.3d 250, 252 (Ind. Ct. App. 2016) (officer testifying he noticed a bulge in the defendant’s groin area stated, “there was a flat top to it with a shirt over top that. Ah, there’s a larger bulge beneath that about the waist line.,..”). In short, Officer Gough gave no reason why he found the bulge suspicious and therefore did not establish a reasonable belief that Bell was hiding a weapon that could be used to harm Officer Gough or others in the area,[13]
Finally, Bell’s failure to answer Officer Gough’s specific question about the bulge does not support. reasonable suspicion of criminal activity. Defendants are not . obligated to answer questions unrelated to the. purpose of the stop. See Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. *242 1319, 75 L.Ed.2d 229 (1983) (noting that during a Terry stop, refusal to answer questions does not, without more, furnish reasonable suspicion); State v. Washington, 898 N.E.2d 1200, 1205 (Ind. 2008) (noting officer’s brief questioning during a traffic stop about whether the defendant had any weapons or drugs did not violate the Fourth Amendment because defendant did not have to answer the questions). And unlike the situation in Scisney v. State, 55 N.E.3d 321 (Ind. Ct. App. 2016), there was no other basis for finding Bell’s failure to answer suspicious. In Scisney, officers investigating a call of shots fired in a high crime area spotted the defendant walking with a man who met the description of the suspect. The defendant touched his waistline when he observed officers and then as he walked toward one officer, did not respond when asked if he had any weapons. On the basis of all of those facts, we found the pat-down did not constitute a constitutional violation. Id. at 324.
Recently, our supreme court decided the ease of Jacobs v. State, 76 N.E.3d 846 (Ind.2017). In Jacobs, there had been multiple reports of shots fired by youths wearing red clothing near an apartment complex and nearby park in a high crime area. Police increased their focus on that area, and two days later, an officer saw several people in the park that he believed should have been in school. Some of the people were wearing red, and although the defendant briefly had a red shirt slung over his shoulder, he was not wearing red. When the group observed a park ranger in a marked car patrol the area, the defendant quickly walked away, only to return after the ranger left the area. The officer then called for backup and when additional marked cars arrived, the defendant again quickly walked away from the assembled group. Officers followed in their car and ordered the defendant to stop. Instead, he continued to walk away, at which point the officers exited their patrol car and ordered the defendant to the ground. The defendant complied and was handcuffed; when defendant got to his feet, the outline of a handgun was clearly visible in his pocket. The defendant’s objection to the officers’ testimony and admission into evidence of the handgun were overruled at his bench trial and he was convicted of possession of a handgun without a license, a Class A misdemeanor. On appeal, our supreme court held the search was constitutionally impermissible under both the United States and Indiana Constitutions. See Jacobs, 76 N.E.3d at 849. Although the officer reasonably believed the defendant was a truant, by the time of the stop, school was out of session and suspicion of truancy could not justify the stop. That the defendant turned and left the park upon seeing the park ranger is insufficient to establish reasonable suspicion. Id. at 851. And the fact the defendant temporarily displayed a red shirt—a known gang color—when juveniles wearing red had fired shots two days earlier in the same area “require[s] one inferential leap too many” because at the time of the stop, the defendant was not wearing red and “police had no articulable suspicion that [the defendant] specifically was involved in any way with the shooting....” Id. Although “taken as a whole,” the defendant’s actions were suspicious and the defendant was in fact found to be carrying an unlicensed handgun, “at the time police moved to detain [the defendant], police did not have a reasonable suspicion that he had engaged in or was about to engage in any criminal conduct.” Id. at 851.
Here, there were no reports of a stolen bike or other criminal activity in the area that Officer Gough believed Bell could have been involved with, Bell never made a move toward either the visible screwdriver or the alleged “bulge,” and his behavior was similar to the behavior of most people *243 stopped by the police. I believe after Officer Gough had confirmation Bell had no outstanding warrants and asked Bell if he had anything illegal on him and Bell said he did not, Officer Gough should have written a citation for the traffic infraction if that was his intent,[14] and allowed Bell to go'on his way. When “taken as a whole,” even though Bell was committing an infraction and even if his actions were suspicious, Officer Gough had only a hunch, not a reasonable suspicion, that Bell might be involved in criminal activity when he stopped him. Pursuant to Jacobs, this is insufficient to overcome Fourth Amendment protections. See id.
Again, I do not take lightly the peril police officers are placed in every day. However, “[a] generalized suspicion that an individual presents a threat to an officer’s safety is insufficient to authorize a pat-down search,” Patterson v. State, 958 N.E.2d 478, 486 (Ind. Ct. App. 2011), and I believe that is all the evidence here shows. I would hold the Fourth Amendment prohibited the pat-down search of Bell.[15]

. Bell did have a screwdriver. However, it was in plain view, and in the context of this stop, Bell was likely carrying the screwdriver as a tool. Based on Bell’s conduct as de-scribéd by Officer Gough during the stop, there is no reason to believe Bell gave Officer Gough any signs or signals he might reach for the screwdriver to wield as a weapon.

. Officer Gough testified at the suppression hearing that he was not intending to issue a citation for the lack of bicycle lights because Bell stopped and talked with him. Tr. at 41.

. Likewise, based on the totality of the circumstances, I believe the Indiana Constitution also prohibited the pat-down.