## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 21 2020, 11:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Brian Woodward
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Johnson, | December 21, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A-CR-1096 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, | The Honorable Samuel L. Cappas, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 45G04-1901-F5-18 |

**Vaidik, Judge.**

# Case Summary

Eric Johnson appeals the trial court's denial of his motion to suppress a handgun found on his person, arguing the police did not have reasonable suspicion to stop him and pat him down. We affirm.

# Facts and Procedural History

Around 12:30 a.m. on January 9, 2019, Hammond Police Department Officers Simon Siba and Joseph Drzich were patrolling an area known for "burglaries, auto thefts, [and] thefts from vehicles" when they observed Johnson "showing interest" in a car parked in an alley near Hohman Avenue. Tr. p. 7. The officers, who could not see Johnson's hands or what he was doing with them, continued driving toward Johnson. When Johnson noticed the officers, he "all of a sudden changed his behavior" and "suddenly walk[ed] away from" the parked car. *Id.* at 14. As Johnson "stumbl[ed]" toward the officers, he had his "right hand around his waist area holding something," and "his left hand was freely swinging." *Id.* at 15, 17; *see also id.* at 47 (describing Johnson's right hand as "grabbing toward[] his waist area"). Officer Siba parked his patrol car, and both officers got out of the car. Officer Siba asked Johnson, who was walking past him with his hands in the air, how he was doing and said he wanted to talk to him. Ex. 2.[1] Johnson said "why" and continued walking past him. *Id.* Officer

---

[1] The officers wore body cams. The recording from Officer Siba's body cam starts when he exited his patrol car.

Siba asked Johnson where he was going, and Johnson, who smelled of alcohol and slurred his words, said he was going to his girlfriend's house. Officer Siba told Johnson to "stop" and "come here," but Johnson kept walking away. *Id.* At this point, Officer Siba grabbed Johnson's right arm, and Officer Drzich grabbed his left. Concerned Johnson was armed, Officer Siba patted him down and felt a handgun in the right pocket of his hooded sweatshirt. Johnson, who did not have a license for the gun, was arrested.

[3] The State charged Johnson with Level 5 felony carrying a handgun without a license, Class A misdemeanor resisting law enforcement, and Class B misdemeanor public intoxication. Thereafter, Johnson filed a motion to suppress, arguing the search and seizure were conducted in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Johnson asked the trial court to suppress "all property seized by the arresting officers, all observations made by the arresting officers, and all statements made by the Defendant." Appellant's App. Vol. II p. 26.

[4] At the suppression hearing, Officer Siba testified that although he tried to have a consensual encounter with Johnson, he "already had made up [his] mind" to stop him based on him standing by the parked car in an area known for car break-ins and quickly walking away from the car when he saw the officers. Tr. p. 33. Following a hearing, the trial court denied Johnson's motion to suppress. The court found the "initial encounter" between the officers and Johnson was

"consensual" and the officers had reasonable suspicion to stop Johnson and pat him down for weapons. Appellant's App. Vol. II p. 61.

[5] This interlocutory appeal now ensues.

# Discussion and Decision

[6] Johnson contends the trial court should have suppressed the handgun found on his person. Ordinarily, we review evidentiary rulings for an abuse of discretion and reverse only when the admission is clearly against the logic and effect of the facts and circumstances. *Johnson v. State*, No. 20S-CR-655, 2020 WL 7038290 (Ind. Dec. 1, 2020). But when a challenge to an evidentiary ruling is based on the constitutionality of a search or seizure of evidence, it raises a question of law we review de novo. *Id.*

## A. Fourth Amendment

[7] Johnson first argues the officers did not have reasonable suspicion to stop him. *See* Appellant's Br. p. 15. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." Generally, to be reasonable, a search must be conducted under a properly issued warrant supported by probable cause. *Pinner v. State*, 74 N.E.3d 226, 229 (Ind. 2017). However, an officer "can stop a person if the officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.'" *Johnson*, 2020 WL 7038290, *2 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "While this stop

requires less than probable cause, an officer's reasonable suspicion demands more than just a hunch: 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *Id.* (quoting *Terry*, 392 U.S. at 21).

[8] As an initial matter, Johnson claims the trial court's finding that the initial encounter between the officers and Johnson was consensual "repudiat[es] any claim of reasonable suspicion prior to the time Johnson was seized." Appellant's Br. p. 17; *see also* Appellant's Reply Br. pp. 6-7. We disagree. Given our de novo standard of review, we are not bound by the trial court's rationale. *See Johnson*, 2020 WL 7038290, *2 (in applying the de novo standard of review, the Indiana Supreme Court affirmed the trial court on a different ground than "the parties and the courts below" focused on—reasonable suspicion instead of probable cause). Moreover, Johnson cites no authority that says if an officer attempts a consensual encounter, anything the officer observed before that point can't be used to establish reasonable suspicion. Accordingly, we consider all of the circumstances known to the officers, not just what happened after they exited the patrol car.

[9] A review of those circumstances shows the officers had reasonable suspicion that Johnson was involved in criminal activity that had occurred or was about to occur, namely, breaking into a car. The officers were on patrol shortly after midnight in an area known for car thefts and break-ins when they spotted Johnson "showing interest" in a parked car. *See Crabtree v. State,* 762 N.E.2d 241, 246 (Ind. Ct. App. 2002) (stating although a defendant's presence in a

high-crime area alone does not constitute reasonable suspicion, it is a factor to be considered); *Wilson v. State*, 670 N.E.2d 27, 31 (Ind. Ct. App. 1996) (stating the time of day a stop occurs is a factor to be considered). When Johnson noticed the officers, he "all of a sudden changed his behavior" and "suddenly walk[ed] away from" the parked car. *See Gaddie v. State*, 10 N.E.3d 1249, 1256 (Ind. 2014) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." (quotation omitted)). The officers had reasonable suspicion to stop Johnson under *Terry*.[2]

[10]  Johnson next argues that even if the officers had reasonable suspicion to stop him, "they did not have an articuably [sic] objective reasonable belief that Johnson was armed and dangerous which warranted the immediate search of his person." Appellant's Br. p. 17. After making a *Terry* stop, an officer may, if he has a reasonable fear that a suspect is armed and dangerous, frisk the outer clothing of that suspect to find weapons. *Johnson*, 2020 WL 7038290, *3. "The purpose of this protective search 'is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.'" *Id.* (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. To

---

[2] Johnson notes Officer Siba incorrectly told him he was in violation of Hammond's sidewalk ordinance. *See* Ex. 2. However, the officers had reasonable suspicion to stop Johnson even without an ordinance violation.

determine whether an officer acted reasonably, we consider the specific, reasonable inferences that the officer, given his experience, can draw from the facts. *Johnson*, 2020 WL 7038290, \*3.

Here, the officers testified that after Johnson quickly walked away from the parked car and stumbled toward them, his left hand swung freely but his right hand was "holding" or "grabbing" something at his waist. According to the officers, they feared Johnson was armed. Given it was after midnight in a high-crime area, the officers suspected Johnson was breaking into a car, and Johnson was holding or grabbing something at his waist as he approached the officers, a reasonably prudent officer in their position would believe their safety was in danger. There is no Fourth Amendment violation.[3]

# II. Article 1, Section 11

Although Article 1, Section 11 of the Indiana Constitution largely tracks the Fourth Amendment, we interpret and apply it independently. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). The reasonableness of a search or seizure under the Indiana Constitution "turns on an evaluation of the reasonableness of

---

[3] Johnson claims this case is like *United States v. Howell*, 958 F.3d 589 (7th Cir. 2020). It is not. In *Howell*, the police were responding to an anonymous 911 call about a man climbing under a fence at a warehouse when they spotted the defendant, who only partially matched the description given by the caller, walking near the warehouse. The police called out to the defendant, who looked panicked and put his hands in his pockets. The police immediately patted him down and found a gun in his pocket. The Seventh Circuit explained, "*Terry* teaches that frisks need to account for the totality of circumstances—they cannot be rote or reflexive—and here the circumstances required more before [the officer's] encounter with [the defendant] would permit a frisk." *Id.* at 601. In this case, there was no anonymous tip. Based on the officers' own observations, they suspected Johnson was engaged in criminal activity. In addition, Johnson did not put his hands in his pockets; rather, he held or grabbed something at his waist.

the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Those circumstances include a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law-enforcement needs. *Id.* at 361.

[13]    Here, the concern and suspicion of the officers was high. Johnson was in a high-crime area known for car thefts and break-ins. Also, Johnson was in this area after midnight. Unknown to Johnson, the officers observed him "showing interest" in a parked car. The officers could not see his hands or what he was doing with them. When Johnson looked up and noticed the officers, he "all of a sudden changed his behavior" and "suddenly walk[ed] away from" the parked car. Johnson's behavior continued to be suspicious as he walked toward the officers with his right hand "holding" or "grabbing" something at his waist. This factor weighs in favor of the State.[4]

[14]    The degree of intrusion was not high. When Johnson walked away from the officers, they grabbed his arms. Officer Siba then patted him down, finding a handgun in the right pocket of his sweatshirt. *See Bell v. State*, 81 N.E.3d 233,

---

[4] Contrary to Johnson's claim, this case is not like *Jacobs v. State*, 76 N.E.3d 846 (Ind. 2017). In that case, our Supreme Court held that while the police had sufficient cause to be suspicious of the defendant in general, "that suspicion was not sufficiently linked to any articulable criminal activity." *Id.* at 852. Accordingly, the Court found the first *Litchfield* factor weighed against the State. Here, in contrast, the officers believed Johnson was trying to break into a car in an area known for break-ins.

238 (Ind. Ct. App. 2017) ("The intrusion into Bell's privacy was minimal as it was merely 'an outer clothes pat-down.'"), *trans. denied*; *Johnson v. State*, 38 N.E.3d 658, 664 (Ind. Ct. App. 2015) (finding the degree of intrusion was "not high" as the officer "took [the defendant's] left arm, ordered him to place his hands behind his back, and continued to do a pat down search of him for weapons at 2:00 a.m. in the bus station"), *trans. denied*. This factor also weighs in favor of the State.

[15] Finally, the extent of law-enforcement needs was high. Not only did the officers suspect that Johnson was breaking into a car, they also suspected he was armed. As Johnson walked toward the officers, his right hand was "holding" or "grabbing" something at his waist. This factor also weighs in favor of the State. Accordingly, we conclude the officers' search and seizure of Johnson was reasonable under Article 1, Section 11 of the Indiana Constitution. We therefore affirm the trial court's denial of Johnson's motion to suppress the handgun.

[16] Affirmed.

Brown, J., and Pyle, J., concur.